In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 06-3647

RUBEN GUZMAN,

*Plaintiff-Appellant*,

*v.*

MICHAEL F. SHEAHAN, Sheriff, et al.,

*Defendants-Appellees*.

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 1814—**Martin C. Ashman,** *Magistrate Judge*.

———————

ARGUED MAY 3, 2007—DECIDED AUGUST 7, 2007

———————

Before EASTERBROOK, *Chief Judge*, and FLAUM and RIPPLE, *Circuit Judges*.

RIPPLE, *Circuit Judge*.  Ruben Guzman was incarcerated as a pre-trial inmate at Cook County Jail. In this action, brought under 42 U.S.C. § 1983, he alleged that Cook County, various prison guards and law enforcement officials violated his right to due process of law as guaran-

teed by the Fourteenth Amendment.[1] The district court granted the defendants' motion for summary judgment.[2] Mr. Guzman timely appealed. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

# I

## BACKGROUND

### A.

Mr. Guzman was a pre-trial inmate at Cook County Jail. On January 21, 2003, Mr. Guzman saw a fellow detainee passing out papers and asked him what the papers contained. Another inmate, Willis Reese, told Mr. Guzman it was none of his business and, unprovoked, hit Mr. Guzman in the face. Reese threw many punches at Mr. Guzman and hit him on the left side of his face. Mr. Guzman punched Reese at least once. After this first exchange of punches, Reese paused for 15-20 seconds to catch his breath and then resumed punching Mr. Guzman. After three to six minutes, Reese hit Mr. Guzman on the left side of his face with a broom. The correctional officers entered the room just as Reese struck Mr. Guzman with the broom.

---

[1] The plaintiff has not appealed the district court's dismissal of the third count of his second amended complaint, which alleges municipal liability against Cook County. Therefore, the issue of municipal liability is not before us.

[2] The parties consented to allow a magistrate judge conduct the proceedings and enter final judgment. *See* 28 U.S.C. § 636(c); N.D. Ill. R. 73.1(a).

Officer Sandra White was the guard on duty when this altercation occurred. The on-duty guard sat in an office known as the "Interlock" which was separated from the main room by a window. Immediately after Reese hit Mr. Guzman the first time, Mr. Guzman saw Officer White talking into her radio. Officer White stated that she had placed a "10-10" call at this time to solicit help from other officers in order to break up the fight. As part of her training, Officer White had been instructed to make a "10-10" call to report inmates fighting, and she was also told to exercise her authority by giving verbal commands in an attempt to induce inmates to cease fighting. Officer White was required to stay in the Interlock at all times; she was instructed that she should wait for backup before leaving the Interlock. Although she contends that she did remain at her post, Mr. Guzman claims that she left the Interlock room for three to six minutes and then returned with other officers to aid in breaking up the fight.

Mr. Guzman was taken to Cermak Health Services and later to Cook County Hospital where an examination revealed that he had suffered a lacerated cornea and eyelid. He had surgery that day and a second surgery a week later. Mr. Guzman remains unable to see out of his left eye.

Mr. Guzman had not seen or spoken with Reese before the altercation; he had not complained to any of the guards about Reese. None of the officers at Cook County Jail knew of any prior difficulty between Mr. Guzman and Reese.

Mr. Guzman's complaint also alleged that the Illinois Department of Corrections had a policy and procedure for the classification of inmates that was designed to ensure that inmates were placed in the proper detention facilities. Section 710.70(c) of the Administrative Regulations promulgated by the Illinois Department of Corrections re-

quires local detention facilities to reclassify all inmates every 60 days. General Order 13.6 of the Cook County Department of Corrections sets forth this requirement for the Cook County detention facilities. According to the Cook County regulations, an inmate is to be reclassified if the inmate returns from court with a mittimus, or warrant of commitment to prison, that lists a new or upgraded charge. An inmate also should be reclassified if his bond is changed or if his status otherwise changes for disciplinary reasons. Department of Corrections officials in the Cook County detention facilities are required to review every inmate for reclassification every 60 days.

The reclassification procedure in Cook County was supposed to be implemented in the following manner: Each night at midnight, Lt. Michael Maeweather received an alphabetical printout of those inmates due for reclassification the next day. He then gave this list to the reclassification personnel who would check the charges and bonds on the computer and ensure that all of the inmates were classified properly. Both parties acknowledge that, even though the jail employees were supposed to get through the entire list each day, this task was an impossible one because of the large number of inmates. Various law enforcement officials testified that, despite contrary regulations, inmates with different criminal histories were often housed together due to overcrowding.

Michael F. Sheahan served as the sheriff at the time these events transpired. Superintendent Daniel Brown, as the superintendent of all aspects of Division 5 operations in the Cook County facility, was charged with ensuring that classification and reclassification of inmates was performed in accordance with the Classification Operations Manual. Lt. Maeweather was the supervisor in Mr. Guzman's

division and reported directly to Supt. Brown. He was charged with ensuring inmates were reclassified properly.

Mr. Guzman submits that Reese's classification was not changed when it should have been according to the reclassification procedure. He contends that this lapse was due to a *de facto* policy and procedure implemented by the defendant officers that tolerated a delay in the reclassification of inmates in the Cook County Jail. Both Reese and Mr. Guzman initially were classified as "Medium Security," but Reese also had been categorized as a "serious violence threat." In addition, Reese's bail status also had changed. In Mr. Guzman's view, when the July 18, 2002 mittimus had been issued showing the addition of a murder charge, Reese should have been reclassified as Maximum Security.

## B.

### 1.

The district court granted the defendants' motion for summary judgment. The court first addressed Count I of Mr. Guzman's complaint in which he alleged that Officer White had been consciously and deliberately indifferent to his safety and welfare. The district court noted that, because Mr. Guzman was a pre-trial inmate, his § 1983 claim should be analyzed under the Due Process Clause of the Fourteenth Amendment. Under the Fourteenth Amendment, Mr. Guzman is afforded protection against deliberate indifference to his safety. In her defense, Officer White submitted that she had no previous knowledge of a substantial risk of serious injury to Mr. Guzman and that her response to the assault was both adequate and reasonable.

The district court noted that the parties were in agreement that there was no evidence from which a trier of fact could conclude that Officer White was aware of a substantial risk of serious injury to Mr. Guzman. Furthermore, the court stated that, *even if* Officer White had actual knowledge of a substantial risk to Mr. Guzman, the record would not support a finding that she had responded unreasonably to the risk presented by the assault. Noting that Mr. Guzman took the view that Officer White was put on notice, after Reese's initial attack on him, that additional hostility might follow, the court concluded that the evidence of record did not support the view that Reese's actions toward Mr. Guzman could be neatly separated into two distinct episodes. The court further held that, even accepting Mr. Guzman's account that Officer White should have yelled at the inmates to stop fighting and should have stayed at her post until the arrival of the backup officers, Officer White nevertheless had acted reasonably, if not perfectly, in response to the unfolding situation. In the course of its discussion, the district court acknowledged and distinguished *Peate v. McCann*, 294 F.3d 879 (7th Cir. 2002), relied upon by Mr. Guzman, and noted that, unlike the situation here, that case involved two distinct altercations. The officer in *Peate* had a clear warning of the hostility between the two inmates because he had been present when officers had stopped the first altercation. He nevertheless allowed one of the inmates to regain access to his makeshift weapon, an act that precipitated the second episode. By contrast, here, there was simply one continuous episode, Officer White had no advance knowledge of the potential risk and she acted reasonably in response to the risk. Accordingly, ruled the district court, a grant of summary judgment in the defendants' favor was appropriate on Count I.

**2.**

The district court next turned to Count II, in which Mr. Guzman alleged that various officers of the Sheriff's Department had implemented and enforced *de facto* policies and procedures that created known and obvious risks of physical harm and injury to inmates at the Cook County Jail and to Mr. Guzman in particular. The district court noted that, because Mr. Guzman had brought official capacity claims against the law enforcement officials, he must demonstrate that their actions were taken with deliberate indifference to known or obvious consequences of such actions. The district court then determined that the evidence of record did not establish an official policy of indifference to substantial risk. Rather, the district court held, the evidence showed that there were policies in place designed to reclassify properly inmates and to minimize risks of harm and other danger to detainees. In the district court's view, the evidence demonstrated that, although other operational priorities sometimes precluded completing all classification adjustments in a timely manner, the cognizant officers did their best to comply with the regulation's mandate. The district court therefore concluded that Mr. Guzman had failed to present evidence of a *de facto* policy that violated his constitutional rights. Accordingly, the district court granted summary judgment in the defendants' favor on Count II.[3]

---

[3] The district court also addressed a third count of Mr. Guzman's complaint and a motion to strike filed by the defendants. These rulings have not been appealed to this court.

## II

## DISCUSSION

### A.

Mr. Guzman appeals the district court's grant of summary judgment in favor of the defendants. This court reviews de novo a district court's grant or denial of summary judgment. *Magin v. Monsanto Co.*, 420 F.3d 679, 686 (7th Cir. 2005). All facts and reasonable inferences must be construed in favor of the non-moving party. *Id.* Our role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the ultimate truth of the matter. Rather, we simply determine whether there exists a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law." *Magin*, 420 F.3d at 686 (citing Fed. R. Civ. Pro. 56(c)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Mr. Guzman was a pre-trial inmate. Therefore, his § 1983 claims are analyzed under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's Cruel and Unusual Punishment Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *see also Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002). The protections for pre-trial inmates under the Due Process Clause are at least as great as those afforded inmates under the Eighth Amendment, *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983), and the standards are "frequently consider[ed] [] to be analogous." *Washington v. LaPorte*

*County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). Prison officials owe inmates, both those who have been convicted and those being detained while awaiting trial, a duty to protect them from violence inflicted by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The Due Process Clause protects pre-trial confinees like Mr. Guzman from deliberate indifference to his safety and welfare. *Butera*, 285 F.3d at 605. Our case law further makes clear that this federal constitutional protection extends only to objectively serious injuries.[4] *Fisher v. Lovejoy*, 414 F.3d 659, 662 (7th Cir. 2005). Given these well-established principles, in order to prove deliberate indifference, Mr. Guzman must show that Officer White was "aware of a substantial risk of serious injury to [Mr. Guzman] but nevertheless failed to take appropriate steps to protect him from a known danger." *Butera*, 285 F.3d at 605.

The Supreme Court of the United States set forth the standard for deliberate indifference in *Farmer v. Brennan*, 511 U.S. 825, 834-37 (1994). Proving that an officer was deliberately indifferent to the safety of a detainee requires "more than a showing of negligent or even grossly negligent behavior." *Fisher*, 414 F.3d at 662. The officer must have acted with "the equivalent of criminal recklessness." *Id.* Prison officials who had actual awareness of a substantial risk to the health or safety of an inmate incur no liability if they "responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent." *Peate*, 294 F.3d at 882. The "mere failure of the prison

---

[4] The parties do not dispute that Mr. Guzman's injury was sufficiently serious to warrant potential recovery.

official to choose the best course of action does not amount to a constitutional violation." *Id.*

The parties dispute several factual matters in the record. First, Mr. Guzman disputes the duration of the fight. According to his account, it lasted three to six minutes. Officer White contends it was only 30 to 60 seconds in length. Second, Officer White claims that she was unable to shout verbal commands to the inmates because she was separated from them by a thick plate of glass. Mr. Guzman urges that the window was constructed simply of mesh. Finally, Mr. Guzman contends Officer White left her post for three to six minutes and then returned with backup. Officer White maintains that she remained at her post throughout the altercation. Because this case comes to us from the grant of summary judgment to the defendants, we must view these facts in the light most favorable to Mr. Guzman. *See Magin*, 420 F.3d at 686. However, even if we view the facts in this manner, Mr. Guzman nevertheless has failed, as a matter of law, to demonstrate Officer White's deliberate indifference.

We have addressed previously what constitutes sufficient information to put an officer on notice that a specific threat exists as to a particular inmate. In *Butera*, the plaintiff inmate had told correctional officers that he was "having problems in the block" and "need[ed] to be removed." *Id.* at 606. This information was insufficient, we held, to alert the law enforcement officials to a specific threat. Here, the record makes clear that Mr. Guzman never before had interacted with Reese. Nor had he ever communicated to Officer White, or to anyone else, that Reese might be a specific danger to him. The record does not demonstrate that any of the defendant law enforcement officials were *actually* aware of Reese's proclivity for

violence, and Mr. Guzman produces no evidence that even would support an inference that such an awareness existed. Mr. Guzman has failed to demonstrate that any officers were on notice of a substantial risk of harm.

As the district court realized, this case stands in stark contrast to *Peate v. McCann*, 294 F.3d 879 (7th Cir. 2002). In *Peate*, an inmate began beating the plaintiff with a sack filled with rocks and other hard substances. *Id.* at 881. The prison guards intervened and broke up the fight. Soon after, a corrections officer permitted an inmate to regain control of his makeshift weapon and, once again, the inmate began beating the plaintiff. In reversing the district court's grant of summary judgment, we emphasized that the first fight had been broken up and yet the guards allowed a second fight to commence between the inmate and the plaintiff. *Id.* at 883. We noted that the first altercation gave the corrections officer specific knowledge that there was a substantial risk to the safety of the plaintiff. The factual situation in *Peate* bears no resemblance to the facts of this case. Officer White had no inkling that Reese and Mr. Guzman might have a fight, and, further, even if the fight lasted three to six minutes as Mr. Guzman submits, there was no significant "break in the action" that could support the conclusion that Officer White was deliberately indifferent to a continued danger to Mr. Guzman.

We analyzed the meaning of deliberate indifference at some length in *Washington v. LaPorte County Sheriff's Department*, 306 F.3d 515, 517-18 (7th Cir. 2002). In addition to noting that mere or even gross negligence will not substantiate a finding of deliberate indifference, we stated that, in a case such as the one before us, deliberate indifference requires that the corrections officer must have "*actual* knowledge" of the risk. *Id.* at 518 (emphasis in

original). In the instant case, Mr. Guzman has provided no evidence sufficient to allow a trier of fact to conclude that Officer White had actual knowledge of a risk of injury. Mr. Guzman readily admits that he had not had earlier problems with Reese and that he had never communicated any concern to Officer White or anyone else in authority.

The district court further determined that, even if Officer White had actual knowledge of a substantial risk of injury to Mr. Guzman, she nevertheless had responded to this risk reasonably. We agree. A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy. *Peate*, 294 F.3d at 883. Taking the facts in the light most favorable to Mr. Guzman, Officer White made a 10-10 call for backup immediately after the altercation broke out. Then, according to Mr. Guzman, she did nothing further, and left her post in the Interlock for at least three minutes, apparently in search of backup. Within minutes, backup arrived, and the inmates were subdued.

Mr. Guzman correctly points out that, in the event of a fight between inmates, a prison guard was also able to exercise authority by shouting verbal commands such as "knock it off" or "stop." He is also correct that there is no evidence in the record that Officer White attempted to quell the disturbance by uttering any such admonitions. She did, however, call immediately for help, and, even if she left her post, it was to secure backup. In this respect, Officer White may have deviated from standard procedure. A deviation of this sort, especially when the officer continued to take steps aimed at stopping the situation, cannot

be characterized as deliberate indifference. She immediately called for backup and attempted to secure that backup. These actions were taken pursuant to her obligations as an officer overseeing the division, and a trier of fact certainly could not characterize these steps as deliberate indifference. At best, they constituted negligence.

## B.

In Count II, Mr. Guzman named as defendants Sheriff Sheahan, Supt. Brown and Lt. Maeweather and several other subordinate officers. Sheriff Sheahan was sued in his official capacity. Although the complaint does not so indicate explicitly, the district court assumed, and the parties assume on appeal, that Supt. Brown and Lt. Maeweather also were sued in their official capacities.[5]

An official capacity suit is tantamount to a claim against the government entity itself. *See Wolf-Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir. 1983); *see also Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 734 (7th Cir. 1994) (superseded by statute on other grounds). In *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728 (7th Cir. 1994), we identified three situations in which a municipality can be said to have violated the civil rights of an individual because of its policy: "(1) an express policy that, when enforced, causes a constitutional deprivation, (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the

---

[5] In his appellate brief, Mr. Guzman makes no claim against the subordinate officers mentioned in Count II. Therefore, no claim against them is properly before us.

force of law, or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.* at 735 (internal citations and quotation marks omitted). Municipal policies can be formulated only by the official charged under state law with the authority and responsibility for acting as the final policymaker in the area of governance in question. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483-84 (1986); *see also Rasche v. Vill. of Beecher*, 336 F.3d 588, 599 (7th Cir. 2003). Our case law establishes that Sheriff Sheahan had such authority with respect to the reclassification of prisoners in the Cook County Jail. *DeGenova v. Sheriff of DuPage County*, 209 F.3d 973, 976 (7th Cir. 2000) ("Illinois sheriffs have final policymaking authority over jail operations.").

In this context, an official capacity claim requires the plaintiff to show that the municipal action "was taken with deliberate indifference as to its known or obvious consequences." *Boyce v. Moore*, 314 F.3d 884, 891 (7th Cir. 2002) (internal citations and quotation marks omitted). A plaintiff "may prove" "deliberate indifference by showing a pattern of violations." *Id.* (internal citations and quotation marks omitted). In order to show deliberate indifference, the cognizant official must have known of a substantial risk of serious injury and consciously must have disregarded that risk. *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). Put another way, "a prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

Mr. Guzman has failed to make a case against Sheriff Sheahan. As he admits in his reply brief, Mr. Guzman provides no evidence tending to show that Sheriff Sheahan, who was the official vested with final policymaking

authority, was aware of the extent of the reclassification delays. Mr. Guzman concedes that "there is no evidence that the Sheriff himself had knowledge that classification and reclassification were being so poorly implemented." Appellant's Reply Br. at 5 n.2. Absent such actual awareness, there can be no finding of deliberate indifference on his part. *Pierson*, 391 F.3d at 902 ("deliberate indifference requires evidence that an official *actually* knew of a substantial risk of serious harm and consciously disregarded it nonetheless") (emphasis added). A trier of fact simply could not find that the practice alleged by Mr. Guzman was a policy formulated or sanctioned by the Sheriff.

The two other officers mentioned by Mr. Guzman—Supt. Brown and Lt. Maeweather—are not final policymakers and therefore cannot formulate, either by action or inaction, municipal policy. Nor can their action be attributed to the Sheriff under the doctrine of respondeat superior. Therefore, if the claim set forth in Count II is brought against them in their official capacity, it necessarily must fail. As we have noted earlier, the language of the complaint is ambiguous with respect to the capacity in which these subordinate officers are sued, but we have held that a complaint that does not make clear that it is brought in an individual capacity will be construed as having been brought only in an official capacity. *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990) ("In the absence of any express statement that the parties are being sued in their individual capacities, an allegation that the defendants were acting under color of law generally is construed as a suit against the defendants in their official capacities only."). Moreover, Mr. Guzman asserts in his brief that he has brought this claim against these individuals only in their official capacities. Appellant's Br. at 24. Under these circumstances, the claims against the subordinate officers must fail.

## Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

A true Copy:

     Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*