**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Submitted March 18, 2009[*]
Decided March 24, 2009

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 08-1906

| | |
|---|---|
| RONALD EDDMONDS, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 05-731-GPM |
| | |
| ROBERT WALKER, et al., | G. Patrick Murphy, |
| *Defendants-Appellees.* | *Judge*. |

**O R D E R**

Illinois inmate Ronald Eddmonds filed suit under 42 U.S.C. § 1983, claiming that the defendants, all employees of the Illinois Department of Corrections, acted with deliberate indifference in violation of the Eighth Amendment when they failed to promptly intervene

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary.  Thus, the appeal is submitted on the briefs and the record.  *See* FED. R. APP. P. 34(a)(2).

in an attack upon him by his cellmate. The district court granted summary judgment to the defendants. Eddmonds now appeals, and we affirm.

Eddmonds was asleep at 3:30 a.m. when his cellmate Bernick Carothers violently attacked him. Carothers began stabbing him with a pen in the left eye and punching him in the face. As Eddmonds screamed for help, Carothers started to choke him and continued punching. Robert Walker, the gallery officer that night, heard Eddmonds's screams and rushed to the cell while radioing Sergeant Larry Quertermous and Lieutenant Taylor, the supervising officer that night, for backup. Quertermous and Walker arrived at the cell first and saw Carothers putting Eddmonds in a chokehold; Carothers warned the two officers that he would kill Eddmonds if either intervened in the fight. Both officers yelled at Carothers to "stop" and "let him go," or they would use chemical spray.

Within three to five minutes Taylor arrived at the cell. By that point Carothers had released Eddmonds and retreated to the back of the cell, and Eddmonds had approached the officers at the front of the cell. Taylor told Eddmonds he would open the cell door if Eddmonds would let them handcuff him, but Eddmonds refused because he feared being constricted as long as Carothers remained in the cell. But he eventually relented, and the officers opened the cell door and restrained both inmates. Eddmonds was taken in a wheelchair to the health care unit, where he remained for nine days, receiving stitches for the puncture wound and intravenous antibiotics.

Soon thereafter Eddmonds filed this suit under 42 U.S.C. § 1983, claiming that the three officers violated the Eighth Amendment by failing to protect him from Carothers. On screening, *see* 28 U.S.C. § 1915A, the district court dismissed the claim against Taylor with prejudice, finding that his decision to handcuff Eddmonds to the cell door before removing him from the cell was at worst negligence, which is not a basis for liability under § 1983. Quertermous and Walker then moved for summary judgment.

The district court granted their motion. Noting that the inmates were housed in a maximum-security prison, the court concluded that the Eighth Amendment did not require the officers to deviate from institutional security policy—namely that a cell door not be opened between 11:00 p.m. and 7:00 a.m. without a lieutenant or higher-ranking officer present. And, relying on *Guzman v. Sheahan*, 495 F.3d 852 (7th Cir. 2007), the court determined that the two officers had not been deliberately indifferent to Eddmonds's safety because they were able to subdue the fight on their own, and only a brief three to five minutes passed before the cell door was opened by Taylor.

On appeal Eddmonds challenges the district court's grant of summary judgment to Quertermous and Walker. He argues that, despite knowing that he was in physical danger,

the officers waited an unreasonable amount of time before opening the cell door. Contrary to the officers' version of events, he claims that neither officer threatened to use chemical spray. Eddmonds also contends that, although the district court found otherwise, Carothers did not have a weapon, a fact he believes shows that Quertermous and Walker faced no real danger when they arrived at the cell. Finally, he attempts to distinguish *Guzman*, upon which the district court relied in its opinion, as an inmate-on-inmate assault case involving just one female officer who witnessed the fight from afar. *See id.* at 858-59.

Prison officials owe inmates a duty to protect them from violent assaults inflicted by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994); *Guzman*, 495 F.3d at 856-57. An official violates that duty, grounded in the Eighth Amendment's prohibition on cruel and unusual punishment, if he is deliberately indifferent to conditions that pose a substantial risk of serious harm to an inmate. *Farmer*, 511 U.S. at 847; *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008); *Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006). In order to prove deliberate indifference, though, an inmate must show more than mere negligence; prison officials must have been "aware of a substantial risk of serious injury to [the inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman*, 495 F.3d at 857 (citing *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)). Moreover, "[e]ven if an official is found to have been aware that [the inmate] was at substantial risk of serious injury, he is free from liability if he responded to the situation in a reasonable manner." *Fisher v. Lovejoy*, 414 F.3d 659, 664 (7th Cir. 2005); *see Farmer*, 511 U.S. 847.

As the district court recognized, we have held that an immediate intervention in an inmate-on-inmate assault is not necessary. *See Guzman*, 495 F.3d at 857-59. In *Guzman* the corrections officer saw a pretrial inmate punch the plaintiff and hit him in the head with a broom; in upholding summary judgment for the defendant, we agreed that she was not deliberately indifferent to the inmate's safety when she left her post for about three minutes in search of backup, which arrived within minutes and subdued the inmates. *Id.* at 853-54, 58-59. In contrast, an officer will be held accountable if he or she is aware of the threat of an assault yet fails to take reasonable action. *See Peate v. McCann*, 294 F.3d 879 (7th Cir. 2002). In *Peate* a corrections officer who saw an inmate beating the plaintiff with a rock-filled sack intervened and broke up the fight, but allowed the attacker to somehow retrieve his sack and resume the beating. *Id.* at 881. In reversing the district court's grant of summary judgment, we noted that the officer, aware of the substantial risk to the plaintiff's safety because of the first assault, had essentially "re-armed" the attacker, allowing the second attack to take place. *Id.* at 883.

The instant case resembles *Guzman* more than *Peate*. Quertermous and Walker, much like the officer in *Guzman*, 495 F.3d at 858, were not aware of any risk that Carothers might attack Eddmonds in his sleep before the assault took place. Once they learned of the

threat to Eddmonds's safety, both responded immediately: Quertermous ran to the cell while calling for backup, which arrived promptly, and both officers upon reaching the cell commanded Carothers to "stop" and "let [Eddmonds] go." These steps, in fact, were more responsive to the situation than those taken by the officer in *Guzman*, who did not shout any commands and actually left the scene of the fight for three minutes. *See id.* at 858-59. Moreover, unlike *Peate*, there was no "break in the action," *id.* at 858, that would have allowed Walker or Quertermous to intervene. Rather, within minutes the officers broke up the fight, separated the inmates once Taylor arrived, and averted a future incident by securing control of the cell. Finally, in not opening the cell door for three to five minutes, both officers were following an institutional policy meant to protect the safety of officers working in a maximum security prison. A trier of fact could not characterize the officers' response to the altercation as any less reasonable than the officer's response in *Guzman*.

Accordingly, the judgment of the district court is AFFIRMED.