NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 15, 2009[*]
Decided July 27, 2009

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 08-1628

| | |
|---|---|
| NATHANIEL WHALEY,<br>    *Plaintiff-Appellant,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
|    *v.* | No. 05-C-898 |
| PETE ERICKSON, et al.,<br>    *Defendants-Appellees.* | Rudolph T. Randa,<br>*Chief Judge.* |

**O R D E R**

Nathaniel Whaley sued several employees of the Wisconsin Department of Corrections after his cellmate poured boiling water on him while he slept. He claimed that the defendants failed to protect him from his cellmate and that they were deliberately

---

[*]After examining the briefs and the records, we have concluded that oral argument is unnecessary. Thus, the appeals are submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2).

indifferent to his need for medical treatment, in violation of the Eighth Amendment. After denying various procedural motions by Whaley, the district court granted summary judgment to the defendants. We affirm.

Whaley, who is incarcerated at the Green Bay Correctional Institute, was transferred from his single cell to a double in 2003 when he finished his two-year term working in the prison's recreation department. He had a difficult time sharing a cell. He was cited for brawling with his cellmate, and he wrote the warden and security director to request a transfer to a single cell on the ground that his next cellmate talked to himself, would not turn out the light at night, and refused his medications. Whaley didn't get the transfer, but he did get a new cellmate, Maynard Carson, with whom he got along no better. He again wrote to the warden and security director, reporting that Carson, like his predecessor, talked to himself and refused to turn out the light. He also notified two correctional sergeants of his problems with Carson.

On December 15, 2004, at around 2 A.M., prison guards broke up a fight between Whaley and Carson. They restrained Whaley and took him to a segregation unit, where they observed that Whaley's skin was blistering from contact with boiling water. Since there were no medical personnel at the prison in the middle of the night, Captain Laurie Laurent phoned the on-call nurse and at her direction provided Whaley with cool compresses and pain medication. At 6 A.M. Whaley was treated by that nurse, who provided him with ointment; at 8 A.M. a doctor applied further topical treatment, bandaged

the burns and gave Whaley pain medication.  Whaley recalls that the physician also pulled

blistered skin from his neck, chest, stomach, and leg.  He was then admitted to the prison

hospital.

Whaley brought this action under 42 U.S.C. § 1983 against various prison employees,

some in both individual and official capacities, for Eighth Amendment violations.  After

certain defendants and a constitutional challenge to a prison "policy" were dismissed at

screening , *see* 28 U.S.C. § 1915A, Whaley was left with claims against the following

defendants, all solely in their individual capacity: Peter Erickson, the prison's security

director; Captain Laurent; Sergeants Wayne Laufenberg and Thomas Campbell, to whom he

had earlier complained about Carson; an unnamed nurse whom Laurent phoned; and

Jeananne Hertel, the nursing supervisor for the prison.  Whaley claimed that Erickson,

Laufenberg, and Campbell exhibited deliberate indifference to the threat Carson posed

when they refused to transfer him to a different cell, and he asserted that Laurent, the

unnamed nurse, and Hertel deprived him of medical attention in the hours immediately

after the incident.

The district court granted summary judgment to each defendant.  In its

comprehensive order, the court concluded that neither Erickson, Laufenberg, nor Campbell

knew that placing Whaley in the same cell as Carson created a substantial risk of serious

harm.  Whaley, the court observed, never told the defendants that Carson had made specific

threats to harm him, and he presented no evidence that any of the defendants knew about

Carson's purported propensity for violence.  The court also determined that Laurent's prompt call to the nurse showed that she was not deliberately indifferent to Whaley's condition, despite the three hour delay in treatment.  Lastly, the court granted summary judgment to the unnamed nurse and Hertel on the ground that Whaley did not claim that they personally violated his constitutional rights.

On appeal Whaley challenges the grant of summary judgment to Erickson, Campbell, Laufenberg, and Laurent.  He renews the arguments he made to the district court that Erickson, Campbell, and Laufenberg knew an attack was likely but refused to shield him from Carson, and again contends that the three-hour gap between his injury and the nurse's visit establishes that Laurent was deliberately indifferent to his condition.

In order to prevail on his claim that Erickson, Laufenberg, and Campbell were deliberately indifferent to the danger that Carson would injure him, Whaley must show that the defendants were actually aware that his cellmate posed a substantial risk of serious injury to him yet failed to take appropriate steps to protect him from that danger. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008); *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007).  We have found a substantial risk of serious harm where custodians know of threats to specific prisoners posed by a specific source, or place prisoners in the same cell as an inmate known to have violent propensities.  *See Brown v. Budz*, 398 F.3d 904, 914-15 (7th Cir. 2005) (collecting cases).

We agree with the district court that the two letters Whaley wrote to Erickson complaining about his cellmates did not alert him that Carson posed a substantial risk. The first letter was sent before Carson was even housed with Whaley. He wrote the second letter after Carson moved into his cell, but Whaley made no mention about Carson threatening to harm him, just that Carson refused to turn the light out, refused his medicine, and wanted constantly to argue. Because neither letter suggested that Whaley feared Carson would attack him, Erickson had no notice that Carson posed a substantial risk of serious harm. *See Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008); *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002). The same is true for Whaley's conversations with Campbell, in which Whaley, at most, told Campbell that Carson was "making threats." Since Whaley did not specify the nature or the target of Carson's threats, Campbell could not have known that Carson posed a substantial risk of serious harm to him. *See Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008); *Grieveson*, 538 F.3d at 776; *Butera*, 285 F.3d at 606. Whaley also suggests that Erickson knew, or should have known, about Carson's propensity for violence, but he submits little evidence of Carson's violent tendencies (Carson was cited for one other fight during 2003 and 2004) and no evidence that Erickson actually knew that Carson posed any kind of risk to another prisoners' safety. *See Grieveson,* 538 F.3d at 775.

Turning to Laufenberg, Whaley contends that their prior conversations were sufficient to apprise the sergeant that he was in harm's way. Whaley says he not only

complained to Laufenberg that Carson was a troublemaker, he also reported that his previous cellmates had threatened him and instigated fights. The district court erred, Whaley submits, by focusing only on his conversation with Laufenberg pertaining to Carson. But the question here is whether Laufenberg knew about the specific threat posed by Whaley being housed with Carson. *See Guzman*, 495 F.3d at 857. Whaley's evidence regarding his previous cellmates has nothing to do with that.

That leaves Whaley's claim against Laurent. To prevail, Whaley needed to show that Laurent acted with deliberate indifference to a serious medical need, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Gil v. Reed*, 535 F.3d 551, 556 (7th Cir.2008); that is, that she acted with intentional or criminally reckless disregard, *see Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001). A prison official cannot be held liable if she "responded reasonably to the risk," *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002), and we agree with the district court that Laurent acted responsibly by calling the nurse as soon as Whaley was secured, *see Johnson v. Doughty*, 433 F.3d 1001, 1010-11 (7th Cir. 2006); *Greeno v. Daley*, 414 F.3d 645, 655-56 (7th Cir. 2005); *Perkins v. Lawson*, 312 F.3d 872, 875-76 (7th Cir.2002).

Whaley also renews his contentions that the district court should have granted two procedural motions. First, he argues that the court should have appointed counsel for him because his case involves legal and fact issues that are beyond his ken, as confirmed by the district court's denial of his motion to amend his complaint. But there is no constitutional

right to an attorney in a civil proceeding, *Jackson v. Kotter*, 541 F.3d 688, 700 (7th Cir. 2008), and we ask, therefore, not whether an attorney would have helped Whaley's case, but whether, given the difficulty of the case, Whaley seems competent to litigate it himself. *See Pruitt v. Mote*, 503 F.3d 647, 653, 655 (7th Cir. 2007) (en banc). The district court did not abuse its discretion when it concluded, based on Whaley's comprehensible briefs and motions and the "straightforward and uncomplicated" issues in this case, that Whaley was competent to litigate on his own.

Lastly, Whaley contends that the district court should have ordered that he undergo a physical exam, pursuant to FED. R. CIV. P. 35(a), to determine the extent of his burns—a diagnosis that, he argues, would somehow show that Laurent was deliberately indifferent. We agree with the district court that Whaley, by neglecting to submit the medical information that he claimed created a dispute, failed to show "that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964); *Goodman v. Harris County*, 443 F.3d 464, 469 n.6 (5th Cir. 2006).

Accordingly, we AFFIRM the judgment of the district court.