NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 19, 2012[*]
Decided February 11, 2013

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 11-3278

| | |
|---|---|
| JAMES BROWN,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Illinois. |
|     *v.* | No. 09-240-GPM |
| DANA RENEE DARNOLD, and<br>KIMBERLEY J. CLEVY,<br>    *Defendants-Appellees.* | G. Patrick Murphy,<br>*Judge.* |

**O R D E R**

James Brown, an Illinois inmate, appeals the grant of summary judgment in his action under 42 U.S.C. § 1983, claiming that two nurses were deliberately indifferent to his serious back pain and that one of the nurses retaliated against him for threatening to file a grievance. We affirm.

---

[*] After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

The events giving rise to Brown's lawsuit occurred in early 2007 over two days. On the morning of March 31, nurse Dana Darnold came to a stairway below Brown's cell with a wheelchair he had requested for his transportation to the infirmary. (Days earlier he had complained of extreme back pain that medication no longer controlled.) According to Brown, Darnold yelled at him as he limped to the wheelchair and said that he would not receive any medication at the infirmary. Then, once he was seated, Darnold pushed the wheelchair in a rough and reckless manner, speeding down the hallways and hitting every bump. During the transport Brown told Darnold that he would file a grievance about her conduct, and she replied, he says, that if he did he would not receive any treatment.

Upon arriving at the infirmary, Brown claimed to receive similarly surly treatment when he was transferred to the care of another nurse, Kimberley Clevy. Clevy had standing orders from the prison doctor (who was not in that day, a Saturday) to provide pain medication if Brown requested it. Clevy's notes reflect that she gave Brown ibuprofen during her shift and that he walked without difficulty at one point; Brown, however, asserts that he could not walk and that Clevy refused to provide him any medication. He also says that she refused to push his wheelchair to his bed, did not take his vital signs, and refused to prepare a bed for him. At seven in the evening Brown began to yell because his pain had migrated to his leg and intensified. By this time Clevy's shift had ended, and another nurse provided him a strong dosage of Tylenol that eased his pain.

The following morning Brown had another run-in with Clevy, who had returned to the infirmary. She denied his request for a wheelchair or crutches to help him return to his cell, and gave him two pills of Tylenol instead. When Brown tried to walk, his muscles locked up and he fell to the floor screaming. After being moved into a bed, he experienced muscle spasms that "balled [him] in a knot," and he cried out for help. According to Brown, Clevy eventually approached, grabbed his feet, and pulled his legs straight so that she could roll him over. This caused Brown immense pain, and she responded to his screams with laughter. Several minutes later Clevy told him that he had gallstones and gave him water and crushed-up pills to help pass the stones. The rest of Brown's stay in the infirmary passed without incident and he returned to his cell the next day. Brown was treated regularly over the next seven months by the prison doctor, who eventually diagnosed a disc bulge in his lumbar spine that she believed was a natural result of aging.

In 2009 Brown sued Darnold and Clevy under § 1983 for deliberate indifference during those two days in early 2007. He claimed that Darnold subjected him to unnecessary pain when she recklessly transported him to the infirmary in a wheelchair and that Clevy had willfully denied him pain medication and other assistance later that day. He also argued that Clevy caused him unnecessary pain the following day when she stretched out his legs during his episode with muscle spasms. Finally, Brown claimed that Darnold

retaliated against him for exercising his First Amendment rights because he received no further treatment from her after threatening to file a grievance about her behavior.

The district court granted summary judgment for Darnold and Clevy, concluding that Brown's testimony had not shown that the nurses were deliberately indifferent to his condition or had provided anything worse than ordinary lack of due care. Addressing only the wheelchair and muscle-spasm episodes, the court found that the nurses' alleged conduct, "while it cannot be condoned," did not rise to the level of a constitutional violation. The Eighth Amendment is not violated, the court said, if a patient with an aching back is not transported in a wheelchair "as gently as he would like," or is yelled or laughed at by his nurses upon experiencing acute pain. The court also determined that Brown's retaliation claim could not succeed because his mere threat to file a grievance is not a constitutionally protected activity. But even if it were a protected activity, the court added, Brown's claim would fail because he *did* receive treatment for his back and leg pain after his encounter with Darnold.

On appeal Brown primarily argues that the district court overlooked a key episode in his claims by failing to address Clevy's conduct during her shift on March 31—her refusal to give him medication, take his vital signs, or help him reach and prepare his bed in the infirmary. Brown is correct that the court did not mention these examples when analyzing his claims, but her conduct as a whole does not show that she was deliberately indifferent to his condition. To show deliberate indifference Brown had to demonstrate that Clevy knew of and disregarded a substantial risk of harm to his health. *See Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). Put another way, he had to show that her conduct was "so plainly inappropriate as to permit the inference that she intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). We must assume that Clevy did not provide pain medication or other assistance during her shift on March 31. Brown does not dispute, though, that another nurse gave him medication that evening and that, the next day, Clevy gave him medication on two occasions and even attempted to treat him for gallstones. A deliberate refusal to treat treatable pain can rise to the level of an Eighth Amendment violation. *E.g.*, *Gil v. Reed*, 381 F.3d 649, 661-62 (7th Cir. 2004). But we do not think the circumstances here, as alleged by Brown — back pain, which can be elusive and difficult to treat, and a delay of a few hours in providing a non-prescription pain reliever — add up to an Eighth Amendment violation. In any event, as the court noted, Clevy allowed Brown to remain in the infirmary and receive treatment there until he was ready to return to his cell on April 2.

Brown next disputes the district court's conclusion that Clevy did not act with deliberate indifference in treating his muscle spasms; he asserts that she could have rolled him over without causing pain and insists that he would not have endured the spasms at

all if she had given him anti-inflammatory drugs, as opposed to ordinary pain medication, the previous day. We agree with the district court that Clevy's response during this episode fell short of violating the Eighth Amendment. A prison official does not violate the Constitution merely by failing to choose the best course of action. *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007). As the district court has acknowledged, Clevy could have handled the episode more gently and sensitively, but even acts that are negligent cannot be equated with deliberate indifference. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Brown has not shown that Clevy treated him with the degree of criminal recklessness necessary to make out an Eighth Amendment violation. *See King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). Finally, to the extent Brown argues that the alleged delay in receiving anti-inflammatory drugs was a constitutional violation, this argument fails because he submitted no medical evidence showing that the delay made his underlying condition worse. *See Williams v. Liefer*, 491 F.3d 710, 715–16 (7th Cir. 2007). Moreover, Brown did not assert before the district court that he even requested anti-inflammatory drugs from Clevy on March 31.

Brown also challenges the district court's conclusion that his threat to file a grievance about Darnold's behavior was not an activity protected by the First Amendment. Although we have not decided whether a threat to grieve is a protected activity, *see Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009), we need not do so here because Brown cannot show that after making the threat he "suffered a deprivation that would likely deter First Amendment activity in the future," *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). Brown suggests that he suffered a deprivation by receiving insufficient treatment in the following days, but the record over the following months shows that the prison doctor saw Brown regularly, prescribed him anti-inflammatory drugs and a steroid for his pain, and eventually pinpointed the source of his pain after ordering an x-ray and magnetic resonance imaging of his lumbar spine.

Brown last argues that he received ineffective assistance of counsel because his recruited lawyer failed to show him Darnold and Clevy's motion for summary judgment before filing a response. But there is no Sixth Amendment to effective assistance of counsel in a civil case, so Brown's only remedy would be a separate malpractice action against his appointed counsel. *Stanciel v. Gramley*, 267 F.3d 575, 581 (7th Cir. 2001); *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 802 (7th Cir. 2000).

Accordingly, we **AFFIRM** the judgment of the district court.