In the

# United States Court of Appeals
## For the Seventh Circuit

No. 11-2336

CURTIS SHIELDS,

*Plaintiff-Appellant,*

*v.*

THOMAS DART, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 C 8077—**Joan B. Gottschall,** *Judge.*

SUBMITTED NOVEMBER 22, 2011[*]—DECIDED DECEMBER 14, 2011

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges*.

PER CURIAM. Curtis Shields, an Illinois prisoner, claims in this action under 42 U.S.C. § 1983 that Illinois prison officials were deliberately indifferent in failing to protect him from an attack by other detainees at the Cook County Jail. The district court granted the defendants' motion

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Therefore the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

for summary judgment because Shields did not demonstrate that the defendants acted unreasonably or knew of a substantial risk of serious harm. We affirm.

This case stems from Shields' experiences as a pretrial detainee in a maximum security area at Cook County Jail in 2009. In response to concerns Shields had expressed for his safety in Tier 1 of Division 9, he was moved to Tier 2B, the so-called "shank deck" that houses detainees charged with possessing weapons at the jail. Weeks later Shields notified a correctional officer that detainees were bringing weapons into two particular cells, but a search of both cells uncovered no knives or other weapons.

The following week Shields was falsely identified by a correctional officer as being a gang leader and "hard hitter" with the Black Disciples; the officer made this comment during a search of Shields' cell, within earshot of other detainees. Shields was stabbed four days later in the day room by two other detainees wielding a homemade knife. A female correctional officer, whose back had been turned during the attack, called for back-up immediately upon seeing blood on Shields' face and shirt. While waiting for back-up, she stood in the "interlock," a secure area separated from the day room with a window, and did not open the door or try to stop the attack. Additional officers did not arrive on the scene to break up the fight until 15 or 20 minutes later.

Shields brought this § 1983 action arguing that the defendants were deliberately indifferent to the risk that he would be attacked. He sued prison administrators

and correctional officers, claiming that they failed to protect him by moving him to the "shank deck," by fabricating his leadership role in the Black Disciples, by not searching all of Tier 2B for weapons, and by not stopping the attack on him in the day room. He also claimed that Cook County Jail has a widespread policy of not protecting inmates from potential attacks.

The district court granted the defendants' motion for summary judgment, concluding that Shields failed to show that the defendants were deliberately indifferent to a substantial risk that he would be harmed by his attackers. According to the court, Shields did not support his claims that he notified any defendant about incidents or threats involving other detainees on the tier, that the correctional officer's comment linking Shields to the Black Disciples put him at an obvious risk of harm, that the correctional officer on duty the day of the attack had acted unreasonably, and that there was an obvious risk of inmate attacks at Cook County Jail.

On appeal Shields argues that the district court erred in granting summary judgment because genuine issues of fact exist whether the defendants were aware of an excessive risk to his safety before the attack. He contends that the defendants knew, given his placement in the "shank deck," that a substantial risk existed that he would be attacked with homemade weapons. He adds that prison officials were aware of fights between gangs in the jail, especially involving the Black Disciples, and that the defendants knew that

the officer's comment linking Shields to the Disciples would put him at risk of an attack.

The district court properly granted summary judgment on this claim. To prove deliberate indifference, Shields needed to show that the defendants knew of a substantial risk of serious injury to him and failed to protect him from that danger. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Santiago v. Walls*, 599 F.3d 749, 758 (7th Cir. 2010); *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011); *Davis v. Oregon County, Missouri*, 607 F.3d 543, 548–49 (8th Cir. 2010). But as the court noted, a general risk of violence in a maximum security unit does not by itself establish knowledge of a substantial risk of harm, *see Dale v. Poston*, 548 F.3d 563, 568 (7th Cir. 2008); *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005), and Shields failed to offer evidence that any violent attack occurred in Tier 2B—other than his own—to put defendants on notice of such a risk to him. *See Butera v. Cottey*, 285 F.3d 601, 607–08 (7th Cir. 2002). As for whether the defendants knew of any particular threat facing him, Shields admits in his brief that he did not report any problems with fellow detainees or fear of attacks after being moved to Tier 2B, even after an officer misidentified him as a leader with the Disciples. And although Shields did report the smuggling of knives into two cells on the tier, the officers' search of those cells yielded no weapons and Shields did not ask that other cells or detainees be searched.

Shields also maintains that the officer on duty during his attack acted with deliberate indifference by failing to verbally command the other detainees to stop

the fighting. But correctional officers who are present during a violent altercation between prisoners are not deliberately indifferent if they intervene with a due regard for their safety: "A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy." *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007); *Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002). The officer here did not open the door to the day room to command the other detainees to stop the attack, but she took other steps to intervene by promptly calling for back-up and monitoring the fight from the secure area until other officers arrived. *See, e.g., Guzman*, 495 F.3d at 858 (no deliberate indifference where officer saw attack on inmate, called for and secured immediate back-up, but did not admonish attackers to stop; officer's actions may have constituted negligence but could not be characterized as deliberate indifference). The officers' 15 to 20 minute delay in arriving on the scene is most troubling but insufficient to constitute deliberate indifference.

Finally, Shields asserts that the defendants bore the burden of showing through affidavits that he was not entitled to summary judgment. But this misunderstands Shields' burden of production. When a plaintiff like Shields fails to produce evidence to defeat summary judgment, a defendant moving for summary judgment need not "support its motion with affidavits or other similar materials *negating* the opponent's claim."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Marion v. Radtke,* 641 F.3d 874, 876–77 (7th Cir. 2011).

AFFIRMED.