**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 15, 2013[*]
Decided April 16, 2013

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1279

| | |
|---|---|
| MICHAEL WILLIAMS, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
|     *v.* | No. 08–cv–00285–SCW |
| | |
| MARK BOOZER and PAUL MCGUIRE, | Stephen C. Williams, |
|     *Defendants-Appellees.* | *Magistrate Judge.* |

**O R D E R**

    Michael Williams, an Illinois prisoner who suffers from Type I diabetes, appeals the judgment, after a bench trial, in favor of the defendants in this deliberate-indifference suit under 42 U.S.C. § 1983. Williams argued that two prison guards, Mark Boozer and Paul McGuire, ignored his diabetes-related foot pain and a doctor's directive by requiring him to wear work boots—footwear that, Williams maintains, caused an infection that eventually led to the amputation of his lower right leg. But the district court reasonably credited the

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

testimony of the two prison guards, who said that they did not require Williams to work, in concluding that they were not deliberately indifferent. We affirm.

The magistrate judge, presiding by consent, heard testimony at a two-day bench trial. Williams had been assigned to work as a porter in his prison's segregation unit beginning in March 2006. Because he worked in segregation, he was required to wear leather work boots to prevent him from concealing contraband. Williams complained to his prison doctor of foot pain, and the doctor signed a medical permission slip stating that Williams should not wear work boots for the next six months. A nurse who had reviewed Williams's medical file testified that doctors issued these permission slips to diabetics to prevent them from developing ulcers because of ill-fitting shoes (work boots are available only in whole sizes). In mid-April, while still assigned to work as a porter, Williams was admitted to the infirmary with a diabetic ulcer on his right toe. The ulcer led to an infection and gangrene. Doctors amputated Williams's toe first, but the infection had already spread and his gangrenous right leg was eventually amputated below the knee in May.

The parties disputed whether Boozer and McGuire were aware of a substantial health risk and, if so, whether they forced Williams to keep working in boots despite that risk. According to Williams, he showed the doctor's note to both guards, thereby informing them of the medical risk, and they callously ignored the risk by ordering him to continue working or face punishment. He testified, for instance, that he first showed the note to McGuire, a sergeant and his direct supervisor, who ordered him to keep working in the boots unless he wanted to be sent to segregation, even though Williams explained that he had previously lost a toe on his left foot from wearing boots. Later that night, Williams complained to Boozer, a lieutenant and the higher ranking officer, that McGuire was forcing him to wear boots despite his permission slip. Boozer reportedly told him to stop complaining and do his job. Williams testified that he kept working because he knew general prison rules required him to work, and he did not want to be punished.

The two guards, however, said they were unaware of the health risk and did not force Williams to work. Both acknowledged that prison rules required Williams to wear boots while working, but they testified that Williams worked for only about half of the days he was assigned to work and added that they never punished or threatened him for not working. McGuire said that he told Williams he needed "secondary" administrative approval of the doctor's permission slip before he could work in gym shoes. He conceded that he did not know how this unwritten process worked, saying that it was the inmate's responsibility to make sure the doctor's note went to the right person (whoever that might be). McGuire testified, however, that he was willing to give Williams time to get the medical slip approved by the administration. For his part, Boozer testified that Williams only once complained about the boots and never showed him a medical permission slip.

In ruling for the defendants, the magistrate judge found the evidence insufficient to show that either Boozer or McGuire acted with a sufficiently culpable state of mind when dealing with Williams's concerns about the state-issued boots. The judge concluded that Boozer was not even aware of the risk, crediting his testimony that Williams never showed him the permission slip. McGuire *was* aware of the risk, the judge determined, but was not deliberately indifferent because he told Williams to seek administrative approval and testified that he allowed Williams to stop working while seeking approval to wear regular shoes. This testimony was corroborated in part, the judge explained, by records showing that Williams did not work about half of his assigned days and had never been punished. Although the judge was dubious that the unwritten policy even existed (it was not mentioned in any prison documents or regulations), he concluded that McGuire's response did not rise to the level of deliberate indifference because his treatment of the doctor's note was, at most, careless or negligent.

On appeal, Williams points to evidence that prisoners are punished if they refuse to work and contends that the court erred by failing to consider how this policy led Williams to reasonably believe that he would be punished if he did not work. In particular, he notes that the guards testified that they were worried about punishment *they* would face if their supervisor saw a prisoner working in gym shoes, and he argues that this selfish motivation led them to callously disregard his doctor's note and valid medical concerns.

Although Williams may have reasonably believed that he had to work or face punishment, deliberate indifference depends on the mental state of the defendants. Here the magistrate judge chose to credit not Williams's testimony but that of Boozer—who said he was unaware of the risk—and that of McGuire—who said that he responded based on what he believed to be prison policy. A court's findings of fact after a bench trial are entitled to great deference and are not set aside unless clearly erroneous; indeed, a "trial court's credibility determination can virtually never amount to clear error." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 447–48 (7th Cir. 2006) (quoting *Carnes Co. v. Stone Creek Mechanical, Inc.*, 412 F.3d 845, 848 (7th Cir. 2005)). The court correctly concluded that Boozer lacked a culpable mental state because guards who are unaware of a risk cannot be deliberately indifferent to it. *See Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011); *Knight v. Wiseman*, 590 F.3d 458, 464–65 (7th Cir. 2009). McGuire presents a somewhat closer case, as the court recognized, but his decision to rely on what he believed to be prison policy and his willingness to let Williams take off assigned work days does not reflect deliberate indifference. *See Johnson v. Snyder*, 444 F.3d 579, 585–87 (7th Cir. 2006); *Norfleet v. Webster*, 439 F.3d 392, 396–97 (7th Cir. 2006).

**AFFIRMED**.