**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted June 20, 2013
Decided June 21, 2013

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 12-3155

| | |
|---|---|
| ROY AUSTIN SMITH, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Indiana, |
| | South Bend Division. |
| *v.* | |
| | No. 3:07cv207 |
| DAWN BUSS, *et al.,* | |
| *Defendant-Appellees.* | Philip P. Simon, |
| | *Chief Judge.* |

**O R D E R**

Roy Smith claims that two guards at the Indiana State Prison violated the Eighth Amendment by causing other inmates to believe he was a "snitch." The defendants' actions showed deliberate indifference to his safety, Smith asserts, and prompted another prisoner to assault him. But at summary judgment Smith could not substantiate his allegations, and the district court dismissed his suit. We affirm that decision.

Except as noted, the facts are undisputed. Smith is serving 124 years in prison for murder and attempted murder. *See Smith v. Indiana*, No. 49A02-1209-PC-783, 2013 WL 2295160, at *1 (Ind. Ct. App. May 23, 2013); *Smith v. Indiana*, 468 N.E.2d 512 (Ind. 1984). He was directed to provide a urine sample for drug screening but apparently thought he could

beat the test by substituting a clean specimen from a fellow prisoner, Thomas Price. The handoff of Price's urine to Smith was witnessed by Correctional Officer Steven Peek, who recounted his observation both in a written statement and a disciplinary charge lodged against Price. In his written statement Officer Peek also documented that Smith had confessed to receiving the urine from Price. A second guard, Correctional Officer Larry Pietrowski, likewise recorded that admission in a disciplinary charge against Smith. Both inmates disputed the guards' accusations but were found guilty after a hearing and penalized with the loss of earned credit time. Their administrative appeals were denied by someone with the initials "DMB"; Smith speculated that person was Dawn Buss, an assistant superintendent at Smith's prison.

Almost seventeen months after the urine incident, Smith entered the cell of another inmate, Trinity Hunter, and repeatedly stabbed him with a homemade knife. Afterward, Smith painted Hunter as the aggressor and said he simply had been defending himself, but a Conduct Adjustment Board rejected this claim of self-defense and found Smith guilty of battery. He was placed in disciplinary segregation and demoted in credit-earning class.

Smith then sued Peek and Pietrowski under 42 U.S.C. § 1983, alleging a link between these events. (He also named Buss as a defendant, but her denial of involvement is undisputed. Buss is not "DMB," and we do not mention her further.) Smith theorized that, after he was caught with Price's urine, the two guards effectively told the entire prison he was a snitch by distributing copies of the disciplinary charges and Officer Peek's written statement, all of which reveal that he identified Price as the source of the substitute urine. Being tagged a "snitch," Smith continued, had spurred Hunter to avenge the slight against Price—an unusual twist since, according to the plaintiff, Price is an influential member of the predominantly black Gangster Disciples while Hunter is an "enforcer" for the Aryan Brotherhood. This chain of events, Smith claimed, shows that the defendants were deliberately indifferent to his safety. (The district court dismissed Smith's remaining claims at screening, *see* 28 U.S.C. § 1915A(a), and he does not challenge that ruling on appeal.) The court initially granted summary judgment for the defendants on the ground that Smith had failed to exhaust his administrative remedies, but we vacated that decision and remanded for further proceedings. *Smith v. Buss*, 364 F. App'x 253 (7th Cir. 2010).

On remand Smith was deposed during discovery. He admitted lacking evidence that any inmate (except Price) had received from prison staff a document containing his admission about Price supplying the substitute urine. Smith also conceded that the defendants had no reason to believe that Hunter posed a threat. Moreover, Smith conceded that he never alerted prison staff about being labeled a snitch before the altercation with Hunter. Thus, when the defendants again moved for summary judgment, the district court concluded that a jury could not reasonably find from the admissible evidence that the

guards had placed Smith in harm's way or ignored a known threat from Hunter or any other inmate. In the alternative, the court concluded that Smith's deliberate-indifference claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), and *Edwards v. Balisok*, 520 U.S. 641, 647–48 (1997), since his allegation that Hunter was the aggressor necessarily calls into question the Conduct Adjustment Board's contrary conclusion.

Smith's appeal is frivolous. As the district court recognized, the *Heck* doctrine is an insurmountable obstacle; the Board's finding that Smith had entered Hunter's cell without provocation and brutally stabbed him cannot be reconciled with Smith's premise that *he* was the one in need of protection. *See Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011); *Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008). Indeed, Hunter filed his own lawsuit claiming that prison officials had failed to protect him from Smith. *Hunter v. Donahue*, No. 3:07-CV-593 (N.D. Ind. Aug. 5, 2010) (dismissing complaint for failure to exhaust administrative remedies), *appeal dismissed*, No. 10-3452 (7th Cir. Jan. 26, 2011). Still, we do not rest our decision entirely on *Heck*, since that doctrine leads to dismissal *without* prejudice, and here the district court did not limit the effect of its judgment. *See* FED. R. CIV. P. 41(b); *Alejo v. Heller*, 328 F.3d 930, 937 (7th Cir. 2003).

On the merits, Smith does not disagree with the district court that he never produced evidence showing that the two guards had disseminated their disciplinary charges or Officer Peek's written statement. *Cf. Shields v. Dart*, 664 F.3d 178, 18 (7th Cir. 2011) (discussing claim that prison officials had deliberately ignored threats to pretrial detainee's safety after guard, speaking in earshot of other prisoners, had misidentified him as leader of Black Disciples). Instead, Smith apparently concedes that Price, not the guards, disclosed Smith's statement implicating him as the source of the urine. According to Smith, the defendants never should have documented his statement, but he cites no legal authority for that dubious proposition. Moreover, even if Smith had shown that the defendants knew Price was broadcasting his treachery, there still was no evidence that they (indeed, anyone at the prison) knew of a specific threat to his safety before he stabbed Hunter. *See Shields*, 664 F.3d at 181; *Owens v. Hinsley*, 635 F.3d 950, 954 (7th Cir. 2011); *Dale v. Poston*, 548 F.3d 563, 565–70 (7th Cir. 2008). As we said in *Dale,* "[j]ust because a correctional officer knows an inmate has been branded a snitch—and it's common knowledge that snitches face unique risks in prison—does not mean that an officer violates the Constitution if inmate gets attacked." 548 F.3d at 570.

And, last, although the district court's reasons for granting summary judgment are more than adequate, we add yet another: There is no admissible evidence to back Smith's speculation that Hunter was out to get him because of the "snitch" label. Hunter seems an unlikely candidate to avenge a leader of another gang that his own gang reviles, *see United States v. Silverstein*, 732 F.2d 1338, 1341 (7th Cir. 1984), and the inference that he was moved

to action seventeen months after Price was disciplined is extremely weak. Causation is an element of a claim under § 1983, *Herzog v. Vill. of Winnetka*, 309 F.3d 1041, 1044 (7th Cir. 2002); *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999), and no jury reasonably could find on this record that the urine incident and Smith's later assault on Hunter were anything but unrelated events.

We have reviewed Smith's remaining arguments, and none has merit. The judgment of the district court is AFFIRMED.