Paul MURPHY, Plaintiff-Appellant,

v.

Deborah RYCHLOWSKI, et al., Defendants-Appellees.

No. 16-1662

United States Court of Appeals, Seventh Circuit.

Argued September 29, 2016

Decided August 18, 2017

562

Jeff Scott Olson, for Plaintiff-Appellant.

Chad R. Gendreau, Anthony D. Russo-manno, Colin Thomas Roth, for Defendant-Appellee.

Before WOOD, Chief Judge, and RIPPLE and WILLIAMS, Circuit Judges.

WILLIAMS, Circuit Judge.

Paul Murphy was convicted of rape by force in Los Angeles County, California 37 years ago. Because of that conviction, California law required Murphy, while he resided in the state, to register as a sex offender for the rest of his life. Murphy moved to Wisconsin 21 years after he committed this offense and was arrested and convicted of aggravated assault. While he never registered with the State of Wisconsin as a sex offender, the Wisconsin Department of Corrections (the "Department") determined that because of his California conviction, Murphy should register as a sex offender for the rest of his life once he was released from prison, in Wisconsin.

In 2012, Murphy challenged the Department's determination that he must register as a sex offender. After a short investigation, the Department concluded that he was not required to register in Wisconsin. It removed Murphy from the registry, and for almost two years, Murphy was free from the restrictions placed upon sex offenders and from the state's registration requirements. But, when Murphy brought this current suit, the Department determined that it had erred when it relieved Murphy of these obligations, and returned him to the registry in October 2014.

Murphy brings suit pursuant to 42 U.S.C. § 1983. He argues that he was denied his constitutional right to due process before being placed on the registry by

the Department. Because he did not receive prior notice and an opportunity to be heard, Murphy believes he was erroneously listed as a sex offender. We disagree, as the Supreme Court has been clear that the Constitution does not require that a state provide individuals with process before being placed on a sex offender registry if the decision to do so is based upon an individual's conviction. Because Murphy's registration status in California is dependent upon his conviction in that state, Murphy was not entitled to process before being placed on the Wisconsin registry and we affirm the district court's grant of summary judgment to the defendants.

## I.  BACKGROUND

### A.  California Conviction

On August 28, 1979, Paul Murphy raped a 35-year-old woman during a robbery. He was 19 years old at the time. He was convicted of rape by force in January 1980, in Los Angeles County, California. As a result, he served a prison sentence and was released on September 7, 1986, remaining on parole until March 6, 1990. Because of this conviction and pursuant to California law, Murphy, for the remainder of his life, must register with California's Sex Offender Registry while residing in California.

### B.  Wisconsin Incarceration

In March of 2001—11 years after completing parole—Murphy moved to Wisconsin. Although required to register for the remainder of his life as a sex offender in California, Murphy did not register as a sex offender with the State of Wisconsin. Five months after his move, he was involved in a fight with two men in Madison, Wisconsin. Although the dispute was perhaps racially motivated, there was no sexual element to the incident. Murphy was convicted of battery in Wisconsin state court and was sentenced to a 15-year bifurcated sentence, which consisted of seven and a half years' confinement followed by an equivalent term of extended supervision.

### C.  Murphy Required to Register as Sex Offender

While incarcerated, Murphy was evaluated by a clinical psychologist who concluded that despite Murphy's prior conviction, sex-offender treatment was not recommended. The Department also determined that Murphy would not be referred for any further evaluation as a sexually violent person because there was insufficient evidence to label him as such. Nor would a special bulletin be issued upon his release.

But before his release, the Department concluded that Murphy's 1980 California conviction, and the resulting lifetime registration requirement, required him to register as a sex offender while residing in Wisconsin. Murphy was released from the state's custody on February 17, 2009. Three days later, on February 20, 2009, he received a letter from the State of Wisconsin's Sex Offender Registration Program that informed him of the Department's decision. The letter noted that the failure to comply with the state's registration requirements would result in a Class H felony, punishable by either a $10,000 fine, up to six years in prison, or both. This was the first time that Murphy was made aware that his California conviction required registration in Wisconsin.

After receiving the letter, Murphy completed the registration form, dating it February 25, 2009. He noted on the bottom of the form that he was completing it "under duress." As a registered sex offender, Murphy's name, address, photo, and physical description were posted on a public and

searchable website that the Department maintains.

### D. Murphy Relieved From Registration Requirements

In 2012, Murphy retained an attorney to challenge his inclusion on the Wisconsin Sex Offender Registry. That attorney reached out to the California Department of Justice for guidance regarding Murphy's reporting requirements under California law. In an email dated June 27, 2012, a Deputy Attorney General for the California Department of Justice stated, "[s]ince [Murphy] is living out of state, he is not currently required to register in California." After Murphy's counsel communicated this information to the Department, it relieved Murphy from Wisconsin's reporting requirements in early July 2012 and removed his information from its website.

### E. Murphy Required to Register Again in 2014

Murphy was not registered as a sex offender in the State of Wisconsin and was free of the obligations associated with registration from July 2012 until October 2014. In October 2014, he filed this action. After receiving a records request from Murphy's attorney, a Department employee contacted a Deputy Attorney General in the California Attorney General's Office for further guidance regarding Murphy's reporting requirements under California law. The Deputy Attorney General informed the Department employee that since Murphy no longer lived in California, his information had been removed from the public California Megan's Law website, but he was still active in the California Sex and Arson Registry ("CSAR"), a law enforcement internet resource not available to the general public. So, even though he was not publically listed as a sex offender, Murphy's information remained (and continues to be) available to law enforcement in California. After learning this, the Department concluded that Murphy was still registered in California, and was, therefore, required to register while residing in Wisconsin.

In a letter dated October 22, 2014, defendant Deborah Rychlowski, an attorney for the Department, notified Murphy of the Department's decision. She provided Murphy with the basis of the Department's decision: that although his information was no longer published to the public, he remained active on the CSAR. Further, because under California law, Murphy would be placed on the public registry if he returned to California, the Department determined that he was required to register with the state pursuant to Wis. Stat. § 301.45(1g)(f). Although Murphy disagreed with the Department's determination, he fulfilled his obligations and registered as a sex offender to avoid the penalties associated with the failure to do so.

### F. Proceedings Below

Murphy filed suit on October 9, 2014. He contends that the Department violated his constitutional right to due process when it did not provide him with notice and an opportunity to be heard prior to placing him on the Sex Offender Registry. He named as a defendant Rychlowski,[1] the attorney who authored the letter informing him of the Department's decision. Later, he filed a Second Amended Complaint adding two more Department employees as defendants—Gail Faust and Sue Klemann.

---

1. Murphy amended his Complaint on February 9, 2015 to include Rychlowski because of her involvement in the decision to return Murphy to the registry in October 2014.

Murphy asserts that had he received process, he would never have been erroneously required to register. The district judge, however, granted the defendants summary judgment, finding that *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003), dictated that Murphy was not entitled to process prior to his placement on the registry. While declining Murphy's invitation to answer the question of whether, as a matter of Wisconsin law, he was required to register as a sex offender in Wisconsin, the district judge granted the defendants summary judgment [2] after concluding that Murphy received adequate post-deprivation process. Murphy now appeals.

## II. ANALYSIS

■ We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to Murphy, the non-moving party, while also drawing all inferences in his favor. *Sorensen v. WD-40 Co.*, 792 F.3d 712, 722 (7th Cir. 2015). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

■ To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendants: (1) acted under the color of state law; and (2) deprived him of a constitutional right. *Colbert v. City of Chi.*, 851 F.3d 649, 656 (7th Cir. 2017). Here, there is no dispute that the defendants were acting in their capacities as state employees when they determined that Murphy's registration status in California required him to register as a sex offender in Wisconsin.

2. The district judge granted summary judgment before the additional Department defendants, Gail Faust and Sue Klemann, had filed

■ The parties' dispute focuses on whether Murphy was deprived of a constitutional right. The Fourteenth Amendment of the United States Constitution prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Due Process is a flexible concept, which varies with the particular situation. *Riano v. McDonald*, 833 F.3d 830, 834 (7th Cir. 2016). But, "[t]he fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)).

■ We engage in a two-part inquiry when evaluating a procedural due process claim. *See Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016). This requires that we determine "whether the plaintiff was deprived of a protected property interest; if so, we determine what process was due under the circumstances." *Id.*; see also *Armato v. Grounds*, 766 F.3d 713, 721–22 (7th Cir. 2014) (same). But, because we find that *Connecticut Department of Public Safety v. Doe*, bars Murphy's claim that he was entitled to process before being placed on the registry, we need not determine whether he suffered a deprivation of a protected liberty interest.

### A. Murphy Not Entitled to Process Before Placement on Registry

■ In *Connecticut Department of Public Safety*, the plaintiff brought suit on behalf of himself and other purportedly non-dangerous sex offenders. He alleged that because the state's registration stat-

an Answer to Murphy's Second Amended Complaint.

ute did not provide for a hearing to determine whether a registrant is "currently dangerous" before placement on the registry, it violated the Due Process Clause. The Supreme Court disagreed. The Court noted that registration under the Connecticut statute was "based on the fact of previous conviction, not the fact of current dangerousness." 538 U.S. at 4, 123 S.Ct. 1160. Because offenders received a "procedurally safeguarded" opportunity to contest the charges against them through the criminal justice system, no further process was required. *Id.* at 7, 123 S.Ct. 1160. Therefore, the Court held that "due process does not require the opportunity to prove a fact that is not material to the State's statutory scheme." *Id.* at 4, 123 S.Ct. 1160.

Murphy contends that *Connecticut Department of Public Safety* is not applicable to his claim because he does not seek to prove whether or not he is dangerous. Rather, he argues that he seeks to prove facts that *are* material to Wisconsin's registration scheme—that he is neither currently required to register as a sex offender in California nor currently registered at this time. The Department's own difficulty in making this determination, he argues, demonstrates that Wisconsin's law is not straightforward in its application and that process is necessary.

The Department, however, maintains that *Connecticut Department of Public Safety*, precludes Murphy's claims, as one's registration status in another state turns on one's conviction status. Therefore, Supreme Court precedent dictates that Murphy was not entitled to process.

We agree with the Department. It determined that Murphy was required to register pursuant to Wis. Stat. § 301.45(1g)(f), which states:

a person shall comply with the reporting requirements under this section if ...

On or after December 1, 2000, [the person] is registered as a sex offender in another state or is registered as a sex offender with the federal bureau of investigation under 42 USC § 14072 and is a resident of this state, a student in this state or employed or carrying on a vocation in this state.

Because Murphy's 1980 conviction for rape by force mandated lifetime registration in California, the Department concluded that under this provision, Murphy must register as a sex offender for the remainder of his life while residing in Wisconsin.

Murphy does not contest that he was convicted of this crime. Nor does he contend that he would not be required to register as a sex offender for the remainder of his life if he were living in California. Rather, he argues that California law does not require him to register because he no longer lives in the state. *See* Cal. Penal Code § 290 (stating that a person convicted of rape by force must register for "the rest of his or her life *while residing in* California") (emphasis added).

But, what Murphy seeks to prove through pre-deprivation process is not a fact that is relevant to the determination of whether he must register under Wisconsin law. Instead, he seeks to challenge a *legal determination* that the Department made when it interpreted Wisconsin law. We do not read *Connecticut Department of Public Safety* as standing for the proposition that an individual is entitled to process to challenge the legal determinations made by the authority charged under state law with administering a sex offender statute. Nor do we find compelling Murphy's argument that his California registration status is a *fact* relevant to the Wisconsin statute. Because Murphy's registration status in California was established after a procedurally safeguarded proceeding (the criminal proceedings), we hold that he was not

entitled to pre-registration process pursuant to the Supreme Court's holding in *Connecticut Department of Public Safety*.

### B. Post-Registration Process Was Adequate

■ Our decision in *Schepers v. Commissioner, Indiana Department of Correction*, 691 F.3d 909 (7th Cir. 2012), suggests that although Murphy was not entitled to process before being placed on the registry, the Constitution mandates that the Department have a procedure in place to correct errors listed in the registry. *See id.* at 915 (finding that a policy that does not allow for individuals to challenge errors reflected in a sex-offender registry violates the Due Process Clause). Murphy contends that the self-initiated and informal exchange between his attorney and the Department cannot be sufficient to comport with the requirements of due process.

■ We turn to the framework enumerated in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), when evaluating whether the process received offends the Constitution. *Mathews* dictates that we must consider three distinct factors: (1) "the private interest that will be affected by the official action"; (2) the risk of an erroneous deprivation of that interest under the procedures used; and (3) the government's interest and the administrative burdens of providing additional process. *Id.* at 335, 96 S.Ct. 893. We discuss each factor in turn.

The burdens associated with being listed on a registry are significant. The Wisconsin Sex Offender Registry is a public and searchable online database that provides a registrant's photograph, name, name and date of offense, and home address. *See*

*generally* Wis. Stat. § 301.45. Registration also limits where an individual can go, *see id.* § 301.475(1) (prohibiting registered sex offenders from being on school premises without notification to the school), or can work, *see id.* § 948.13 (prohibiting sex offenders from working with children). It also prohibits an individual from changing his or her name. *See id.* § 301.47.[3] One cannot deny the stigmatizing effect of being erroneously placed on a registry. *See Schepers*, 691 F.3d at 914.

Nonetheless, the second and third factors weigh in favor of our conclusion that the process that Murphy received was sufficient. The risk of erroneous registration is low—the statute is based upon one's registration status, a status which requires a criminal conviction. While Murphy argues that the fact that the Department has reversed itself twice is evidence that the statute's application is not straightforward, he misses the point. Mistakes can happen in any process. But under Wisconsin law, individuals who are placed on the registry have already had a procedurally safeguarded opportunity to contest their status, thereby protecting against an erroneous deprivation. And, this is not a case in which there is no process at all to challenge an erroneous listing on the registry. Rather, Murphy was able to do so by contacting the Department, whose address and phone number were clearly listed at the top of the notification letter he received in February 2009.

Furthermore, the government's interest here cannot be understated, an assertion that Murphy seems to concede. *See* Appellant's Br. at 40 ("The district court said, no doubt correctly, that the state interest be-

---

3. Murphy asserts that he is subject to additional restrictions because he is a sex offender on supervised release. But, we find his reliance on these restrictions unavailing, as they

are not directly related to his status as a sex offender, but rather, were imposed by virtue of his 2002 conviction and are, therefore, irrelevant to this analysis.

hind sex offender registration programs like Wisconsin's was to protect people, especially children, from sex offenders."). "Sex offenders are a serious threat in this Nation," *McKune v. Lile*, 536 U.S. 24, 32, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), and registration programs, such as the one Wisconsin has enacted, are aimed at protecting the public. According to the Center for Sex Offender Management, about 12 to 24% of sex offenders reoffend. Center for Effective Public Policy, *Fact Sheet: What You Need to Know*, CENTER FOR SEX OFFENDER MANAGEMENT, http://www.csom.org/pubs/needtoknow_fs.pdf (last visited July 31 2017). Therefore, the government has a real and justified interest in ensuring that the public has the ability to access this registry information. This interest, coupled with the low probability of erroneous deprivation, lead us to conclude that the process Murphy received was constitutionally adequate.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment to the defendants.