NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted April 12, 2018[*]
Decided April 23, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 17-2869

| | |
|---|---|
| CALVIN GLOVER,<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Western District of Wisconsin. |
| *v.* | No. 14-cv-864-jdp |
| JAMES SCHRAUFNAGEL,<br>    *Defendant-Appellee*. | James D. Peterson,<br>*Chief Judge*. |

**O R D E R**

Calvin Glover, a Wisconsin prisoner, sued a correctional officer for violating the Eighth Amendment by issuing a conduct report that Glover believes branded him a "snitch" and led to him getting attacked by another inmate. The district judge entered summary judgment for the officer, concluding that he could not have been deliberately indifferent because he had no advance warning of the attack. We affirm because a substantial risk of serious harm was not obvious from the evidence Glover produced.

---

[*] We agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

We recount the record in the light most favorable to Glover, the opponent of summary judgment, and draw all reasonable inferences in his favor. *See Murphy v. Rychlowski*, 868 F.3d 561, 565 (7th Cir. 2017). During a random search of Glover's cell, correctional officer James Schraufnagel found a calculator etched with the name of Julius Coleman, another inmate at the prison. Glover told Schraufnagel that the calculator had been given to him not by Coleman but his neighbor. Schraufnagel prepared a conduct report charging Coleman with theft and other offenses. WIS. ADMIN. CODE DOC §§ 303.34, .35, .36, .40 (2006). However, contrary to Glover's characterization of the conversation, Schraufnagel wrote that "Glover said he got [the calculator] from Inmate Coleman." Schraufnagel added that he questioned Coleman, who admitted to carving his name on it. Lastly, he wrote that he confirmed that the calculator was the property of the prison's school and that it had not been checked out.

The next day Coleman, in Glover's words, "confronted" him with the conduct report. Glover then asked Schraufnagel to correct the report by removing the statement attributed to him. Schraufnagel refused, telling Glover that he could testify for Coleman. Coleman showed the conduct report to other prisoners, who Glover says "ostracized" him as a "snitch."

Weeks later Glover was assaulted in the gym by another prisoner. Glover, who sought care at the Health Services Unit, told the treating nurse that the attacker had kicked him and called him a snitch, but he chose not to report the prisoner for fear of retaliation. According to Glover, the nurse lied in medical records when she quoted Glover as saying the prisoner was "apologetic" and "thought he was someone else." Glover sued Schraufnagel under 42 U.S.C. § 1983, asserting that the officer knew that falsely identifying him as the source of "incriminating information" in another inmate's conduct report created a substantial risk of serious harm to his safety.

The judge granted Schraufnagel's motion for summary judgment and determined that there was no evidence that Schraufnagel knew Glover faced a substantial risk of harm from fellow inmates. Even if Schraufnagel should have known that the circumstances might lead to an assault, the judge said that any risk to Glover's safety was not obvious.

On appeal Glover maintains that Schraufnagel was deliberately indifferent by falsely labeling him a "snitch" in the conduct report. Glover points to *Northington v. Marin*, 102 F.3d 1564, 1567–68 (10th Cir. 1996), in which the Tenth Circuit upheld a judgment for an inmate who established that a deputy acted with "obdurate and wanton" disregard for his safety by spreading a rumor in jail that the inmate was a

snitch. Indeed, the Tenth Circuit and two others have said more recently that officials who label a prisoner a snitch, knowing that this reputation carries serious dangers, may be found deliberately indifferent. *See Irving v. Dormire*, 519 F.3d 441, 451 (8th Cir. 2008); *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138–39 (9th Cir. 1989). And in an unpublished decision, we vacated summary judgment for a prison official who deliberately exposed a prisoner to harm by insinuating to fellow inmates that the prisoner had placed "hits" on them. *Turner v. Pollard*, 564 F. App'x 234, 238 (7th Cir. 2014).

But these cases are distinguishable because Schraufnagel did not label Glover a snitch or spread a rumor that put him at risk of assault. Schraufnagel's conduct report made no reference to any accusation from Glover that Coleman committed an infraction. Instead, Schraufnagel wrote only that "Glover said he got [the calculator] from Inmate Coleman to use"—a statement that by itself does not suggest any violation of Wisconsin's prison rules. Furthermore, unlike in *Northington* and similar cases, the snitch rumor was spread by a prisoner (Coleman) not the officer (Schraufnagel). *See Northington*, 102 F.3d at 1567; *Irving*, 519 F.3d at 449, 451; *Benefield*, 241 F.3d at 1270; *Valandingham*, 866 F.2d at 1138; *see also Smith v. Buss*, 515 F. App'x 599, 601 (7th Cir. 2013) (affirming a judgment for the guards because the prisoner, not the guards, disseminated disciplinary charges containing the plaintiff's statement implicating a fellow prisoner).

Glover also asserts that a substantial risk of harm was obvious to Schraufnagel before the assault. Glover explains that the obviousness of such a risk may be established by circumstantial evidence, *see Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994), which here surrounds Coleman's conduct report: specifically, Schraufnagel's identification of Glover as a source of "incriminating information" for a "major rule violation," Schraufnagel's awareness of a maximum-security prison's dangerousness as gleaned from his decade of experience working there, and Glover's statement to Schraufnagel after Coleman "confronted" him with the report.

Glover's circumstantial evidence does not permit a reasonable inference that a substantial risk was obvious to Schraufnagel. The conduct report's reference to Glover did not make it foreseeable that Coleman would view Glover as a snitch or respond violently if he did. And the "general risk of violence in a maximum security unit" is insufficient to alert staff—of any experience level—to a risk to a particular prisoner. *See Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011). Further, Glover's report of being confronted by Coleman does not convey a threat of serious harm. Nothing in the record

suggests that Coleman was known to be violent, and reporting a confrontation without further detail presents only a vague safety concern that is insufficient to alert officers of a substantial risk to the reporting prisoner's safety. *See Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) ("[V]ague statements that inmates were 'pressuring' [plaintiff, a known snitch,] and 'asking questions' were simply inadequate to alert the officers . . . [of] a true threat . . . ."); *Klebanowski v. Sheahan*, 540 F.3d 633, 639–40 (7th Cir. 2008) (deciding officers who knew only that the prisoner was "afraid for his life" and had been beaten could not be aware of substantial risk); *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (affirming entry of summary judgment where the prisoner stated only that he was "having problems" in his cellblock and "needed to be removed"); *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995).

Accordingly, the district court's judgment in favor of Schraufnagel is

AFFIRMED.